CARDIOVASCULAR SPECIALISTS, P.S.C., Appellant,

v.

Nicholaos XENOPOULOS, M.D., Appellee

No. 2009–CA–001442–MR.

Court of Appeals of Kentucky.

Nov. 24, 2010.

Robert B. Craig, Covington, KY, for appellant.

Trevor L. Earl, Louisville, KY, for appellee.

Before KELLER, MOORE, and STUMBO, Judges.

*OPINION*

KELLER, Judge:

This is an appeal from an order of the Jefferson Circuit Court directing Cardiovascular Specialists, P.S.C. (Cardiovascular Specialists) to provide one of its shareholders, Nicholaos Xenopoulos, M.D. (Dr. Xenopoulos), with certain documents and information. For the following reasons, we vacate and remand.

## FACTS

Cardiovascular Specialists is a professional service corporation formed pursuant to Kentucky Revised Statutes (KRS) Chapter 274, and Dr. Xenopoulos is a shareholder. On January 7, 2009, Dr. Xenopoulos's counsel sent a letter (the January 7th letter) to the President of Cardiovascular Specialists requesting that Cardiovascular Specialists allow Dr. Xenopoulos to inspect certain business records. Specifically, the letter stated that Dr. Xenopoulos wished to inspect and copy the following records:

A. The current articles of incorporation and bylaws of the Corporation, together with any amendments or addenda thereto;

B. The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting since January 1, 2005;

C. All written communications to shareholders generally within the past three (3) years, including financial statements. In the event that financial statements have not been given to shareholders, then demand is made alternatively under KRS 271B.16–200 for the financial statements for 2005–2008 inclusive. Please provide, in addition to the companies' financial statements, federal, state and local tax returns for the Corporation for 2007 and for 2008 upon completion.

D. All minutes from any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the Corporation, records of action taken by the board of directors without a meeting since January 1, 2005; and

E. All accounting records of the Corporation for fiscal years 2005, 2006, 2007, and 2008.

The letter stated that "Dr. Xenopoulos' [sic] demands under subsection (2) of KRS 271B.16–020 are made in good faith and for the purpose of obtaining a true and accurate valuation of his shares in the Corporation." It is undisputed that Dr. Xenopoulos received all of the documents requested in the January 7th letter.

On March 5, 2009, Dr. Xenopoulos's counsel sent another letter (the March 5th letter) requesting additional information. Specifically, the letter stated that, after having reviewed the various materials previously provided by Cardiovascular Specialists with Dr. Xenopoulos's accountant, "it is apparent that we need some additional information about a few items on the financial statements...." The following additional items were requested:

1. We would appreciate receiving information relating to any loans to the PSC's shareholders, or other entities, including but not limited to, Kentuckiana Medical Center, and evidence of repayment within the last five years.

2. A detail of the rent and lease payments made to landlords and lessors for 2007 and 2008. In addition, we would like to know whether, and to what extent, any of the shareholders have an interest in entities leasing space or equipment to the PSC.

3. We would like to see the computation of allocation of income and expenses resulting in the amount paid to each of the shareholders for 2007 and 2008.

4. Please forward a schedule of the staff which works not only for the Practice but also for Kentuckiana Medical Center and/or Dr. Rumisek. In this connection, we would like to see the allocation of the hours of various members of the shared staff

and the allocation of their compensation to the two entities.

5. Finally, we would appreciate seeing a written accounts receivable collection policy, if there is one, and copies of uncollected invoices from all the physicians currently over 180 days old as of February 28, 2009.

Cardiovascular Specialists did not provide Dr. Xenopoulos with these additional documents. On May 13, 2009, Dr. Xenopoulos filed a Verified Petition For Order Enforcing Shareholder's Right of Inspection in the Jefferson Circuit Court, and on June 23, 2009, Dr. Xenopoulos filed a Motion for Order Compelling Inspection of Corporate Records. On July 13, 2009, the trial court entered an order granting Dr. Xenopoulos's motion and directing Cardiovascular Specialists to provide Dr. Xenopoulos with the requested documents within twenty days from the date the order was entered. The trial court did not make any findings or provide any reasoning for its decision in its order. This appeal followed.

## STANDARD OF REVIEW

 Matters of statutory construction are subject to *de novo* review and this Court is not bound by the trial court's interpretation. *Halls Hardwood Floor Co. v. Stapleton,* 16 S.W.3d 327, 330 (Ky.App. 2000). However, when there are questions of fact, or mixed questions of law and fact, we review the trial court's decision pursuant to the clearly erroneous standard. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003). Under this standard, this Court will only set aside the findings of fact of the trial court if those findings are clearly erroneous. The dispositive question is whether the findings are supported by substantial evidence. *Id.*

## ANALYSIS

Cardiovascular Specialists contends that the trial court erred in granting Dr. Xenopoulos's motion. Specifically, Cardiovascular Specialists argues that Dr. Xenopoulos did not have a statutory right to inspect the requested documents.

As noted above, Cardiovascular Specialists is a professional service corporation formed pursuant to KRS Chapter 274. Except as otherwise provided under KRS Chapter 274, a professional service corporation has the "same powers, authority, duties, and liabilities as a corporation formed under KRS Chapter 271B." KRS 274.015(2). Because KRS Chapter 274 does not address a shareholder's right to inspect corporate documents, we must look to KRS Chapter 271B.

KRS 271B.16–020 creates two rights of inspection of corporate records by a shareholder. The first, under KRS 271B.16–020(1), pertains to certain documents which a corporation is required to have available at its principal office. This includes the corporation's articles of incorporation, bylaws, resolutions regarding classes of shares, minutes or records of shareholders' actions for the past three years, all written communications to the shareholders within the past three years, including financial statements furnished to the shareholders, names and addresses of current directors and officers, and the most recent annual report. *See* KRS 271B.16–010(5). A shareholder has the right to inspect these corporate records after giving five days' notice. KRS 271B.16–020(1).

A separate right of inspection for other corporate documents is provided under KRS 271B.16–020(2), which states that:

A shareholder of a corporation shall be entitled to inspect and copy during regular business hours at a reasonable location specified by the corporation any of

the following records of the corporation if the shareholder meets the requirements of subsection (3) of this section and gives the corporation written notice of his demand at least five (5) business days before the date on which he wishes to inspect and copy:

(a) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under subsection (1) of this section;

(b) Accounting records of the corporation; and

(c) The record of shareholders.

Subsection (3) of KRS 271B.16–020 provides that:

A shareholder may inspect and copy the records described in subsection (2) of this section only if:

(a) His demand is made in good faith and for a proper purpose;

(b) He describes with reasonable particularity his purpose and the records he desires to inspect; and

(c) The records are directly connected with his purpose.

■ Based on the preceding, the first step in our analysis is to determine whether documents requested by Dr. Xenopoulos are corporate records that a shareholder is entitled to inspect. Dr. Xenopoulos argues that, pursuant to KRS 271B.16–020(2)(b), he does have a right to inspect all of the documents requested in the March 5th letter because they are all "[a]c-

counting records of the corporation." Cardiovascular Specialists contends that none of the documents requested fall within any of the types of records a shareholder is entitled to inspect and that Dr. Xenopoulos broadly characterized the additional documents as "accounting records".

As correctly noted by Cardiovascular Specialists, "accounting records", as set forth in KRS 271B.16–020(2)(b), is not defined. Because "accounting records" is not defined, Cardiovascular Specialists points to KRS 271B.16–010(2) for guidance, which provides that a corporation must maintain "appropriate accounting records." In an attempt to define "appropriate accounting records," Cardiovascular Specialists cites to section 16.01 of the 1984 Model Business Corporation Act.[1] According to the Model Act's official comment 2 for that section:

"Appropriate" records are generally records that permit financial statements to be prepared which fairly present the financial position and transactions of the corporation. In some very small businesses operating on a cash basis, however, "appropriate" accounting records may consist only of a check register, vouchers, and receipts.

Cardiovascular Specialists argues that the documents Dr. Xenopoulos seeks are not necessary for the preparation of Cardiovascular Specialists' financial statements and therefore do not fall within the Model Act's definition of "appropriate" accounting records. Thus, Cardiovascular Specialists contends that Dr. Xenopoulos is not entitled to inspect the requested documents.

We note that, while KRS 271B.16–010(2) states that a corporation must maintain

---

1. The General Assembly enacted KRS 271B.16–010 in 1988, which models the 1984 Model Business Corporation Act. With the exception of the references to section numbers, KRS 271B.16–010 is identical to section 16.01 of the Model Act.

"appropriate accounting records," there is not a corollary statutory right for a shareholder to inspect those records. Thus, that section is not relevant to this appeal. We believe the relevant section in this case to be KRS 271B.16–020(2)(b). Under this section, a shareholder has a right to inspect "accounting records of the corporation," under certain circumstances. Significantly absent from the statutory language in that section is the word "appropriate." Thus, the definition of the word "appropriate" and the comment provided in the Model Act are irrelevant to our determination of what constitutes an "accounting record" under KRS 271B.16–020(2)(b). *See Beckham v. Board of Educ. of Jefferson County*, 873 S.W.2d 575, 577 (Ky.1994) (noting that our duty is to ascertain the intent of the General Assembly and that we are not at liberty to add or subtract language from a statute). Accordingly, we find Cardiovascular Specialists' argument that Dr. Xenopoulos is not entitled to inspect the requested documents because they are not "appropriate" accounting records to be unpersuasive.

The determination of whether the documents requested by Dr. Xenopoulos are accounting records of the corporation is a finding of fact to be made by the trial court. However, it is unclear from the record whether the trial court determined that the requested documents were accounting records, and the trial court's order is void of any such finding. Additionally, the March 5th letter requesting the records, the complaint for inspection of the records, and the motion to compel inspection of the corporate records do not contain any explanation as to how the requested documents are accounting records of the corporation under KRS 271B.16–020(2)(b).

Even if the trial court had determined that the requested records are accounting records of the corporation, the trial court did not make any findings with respect to whether the requested records were "directly connected" to Dr. Xenopoulos's alleged proper purpose of valuing his shares. *See* KRS 271B.16–020(3). As previously noted, subsection (3) of KRS 271B.16–020 provides that a shareholder may inspect certain records if the demand is made in good faith and for a proper purpose, if the shareholder describes which records he desires to inspect with reasonable particularity, and if the records are directly connected to the shareholder's stated purpose.

Cardiovascular Specialists concedes that a good faith request for corporate records for use in ascertaining a value on a shareholder's stock is a "proper purpose" under KRS 271B.16–020(3)(a). Thus, it is not disputed that Dr. Xenopoulos stated a proper purpose for requesting the documents. Further, having reviewed the March 5th letter, we believe that Dr. Xenopoulos stated which records he desired to inspect with reasonable particularity. However, the March 5th letter, the complaint for inspection, and the motion to compel inspection of the corporate records do not contain any explanation by Dr. Xenopoulos as to why the records are necessary for his stated purpose of stock valuation. Additionally, the trial court did not make any findings with respect to whether the requested records were directly connected to Dr. Xenopoulos's alleged proper purpose of valuing his shares.

Therefore, we vacate the trial court's order granting the request for inspection and remand this case to the trial court for specific findings as to whether the requested documents are accounting records of the corporation. If the trial court determines that the requested documents are accounting records of the corporation, it should then make additional findings as to whether the requested records are "direct-

ly connected" to Dr. Xenopoulos's alleged proper purpose of valuing his shares. The trial court may, if necessary, conduct additional proceedings prior to making the required findings.

## CONCLUSION

For the foregoing reasons, we vacate the trial court's order and remand for further proceedings consistent with the opinion.

STUMBO, Judge, concurs.

MOORE, Judge, concurs in result only.